UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ALONZO FERGUSON, | Civil No. 08-5195 (PAM/FLN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| TERRY CARLSON, Warden, | |
| Respondent. | |

Roy G. Spurbeck, Assistant Minnesota State Public Defender, 540 Fairview Avenue North, Suite 300, St. Paul, Minnesota, 55104, for Petitioner.

J. Michael Richardson, Assistant Hennepin County Attorney, C-2000 Government Center, Minneapolis, Minnesota, 55487, for Respondent.

FRANKLIN L. NOEL, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Alonzo Ferguson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) Respondent has filed a response, (Docket Nos. 8-12), contending that the petition should be denied. The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be denied, and that this action be dismissed with prejudice.

**I. BACKGROUND**

Petitioner has presented only a single claim for relief in his current petition, and much of the factual and procedural history of this case is wholly irrelevant to that claim. Therefore, the Court will provide only a brief synopsis of the background of this case.

A man named Allen Wheatley, Jr. was shot and killed on September 24, 1994, and Petitioner was charged and convicted for murdering him. That conviction was later set aside, and Petitioner was granted a new trial, based on evidence showing that a witness had recanted his previous trial testimony. Petitioner's second trial resulted in a hung jury, and he was then tried for a third time. Petitioner's third trial is at issue here. See State v. Ferguson, 729 N.W.2d 604, 609-10 (Minn.App. 2007), rev. denied, June 19, 2007, [hereafter "Ferguson"].

During the voir dire stage of Petitioner's third jury trial, the veniremen filled out written questionnaires that provided some information about themselves. They were later interviewed, individually, during the voir dire proceedings. An African-American venireman, identified as "Juror 21," was questioned at some length, first by the trial court judge, and then by Petitioner's attorney. (Trial Transcript, [Docket No. 11] [hereafter "Tr."], pp. 518-36.) When Petitioner's counsel finished his questions, he indicated that Juror 21 was acceptable to the defense. The prosecutor immediately exercised a peremptory strike against Juror 21, without asking him any further questions. (Tr. p. 536.) Petitioner's counsel then raised a "Batson challenge," arguing that Juror 21 had been improperly stricken from the jury panel based solely on his race, in violation of the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986).

The trial court judge asked Petitioner's counsel why he thought that Juror 21 had been stricken based on his race. The attorney pointed out that (i) the prosecutor did not ask Juror 21 any questions, (ii) Juror 21 was only the second African-American venireman to be examined, (iii) the prosecutor had previously exercised a peremptory strike against a woman who was from Afghanistan, without questioning that prospective juror, and (iv)

2

Juror 21 had "said he could be fair and impartial." (Tr. p. 537.)

The trial court judge rejected Petitioner's <u>Batson</u> challenge, finding that Petitioner had failed to establish a prima facie case of race discrimination. The judge pointed out that (1) the prosecutor had already accepted one African-American juror, and (2) there was nothing inherently wrong with exercising a peremptory strike against a prospective juror who claimed that he would judge the evidence fairly and impartially. (Tr. pp. 539-41.)

The judge also suggested that if the prosecutor had asked Juror 21 some questions, those questions might have shown some racial prejudice, but the absence of questions, without more, did not imply that the prosecutor's strike was, in fact, racially motivated. Referring to the prosecutor's strike against Juror 21, the judge asked defense counsel: "[I]f he [the prosecutor] hasn't asked any questions at all how am I supposed to fathom why he did it?" (Tr. p. 541.) The defense attorney acknowledged that he could offer little more than the prosecutor's lack of questions to support his <u>Batson</u> claim, asking the judge: "[H]ow am I supposed to provide you with a prima facie case with anything else other than that argument?" (Tr. p. 541.) The judge responded: "Well, I don't know that you can. But the Rule requires that you do so before I grant your Motion." (Tr. pp. 541-42.)

The trial court judge ultimately concluded that Petitioner had failed to make a prima facie case of racial discrimination – i.e., Petitioner had not shown that the prosecutor exercised a peremptory strike against Juror 21 because of his race. (Tr. pp. 544-45.) Therefore, Petitioner's <u>Batson</u> challenge was denied, and Juror 21 was not seated as a juror at Petitioner's trial.

At the conclusion of Petitioner's trial, the jury found him guilty of second-degree murder and second-degree murder for the benefit of a gang. He was sentenced to a total

of 360 months in prison, and his motion for a new trial was denied.

Petitioner then filed a direct appeal with the Minnesota Court of Appeals.[1] Petitioner raised several claims on appeal, including the <u>Batson</u> claim pertaining to Juror 21, and a sentencing claim. The Court of Appeals rejected all of Petitioner's challenges to his conviction, including the <u>Batson</u> claim, but remanded the case for resentencing. On remand, Petitioner was sentenced to 318 months in prison. He is presently serving his sentence at the Minnesota Correctional Facility in Rush City, Minnesota.

After Petitioner's conviction was affirmed by the Minnesota Court of Appeals, he filed a petition for further review in the Minnesota Supreme Court. Petitioner contends, (and Respondent does not deny), that he raised his <u>Batson</u> claim in his petition for review. However, the Minnesota Supreme Court summarily denied the petition without comment.

Petitioner then filed his current petition for a writ of habeas corpus under 28 U.S.C. § 2254. The only ground for relief raised in the current petition is the <u>Batson</u> claim pertaining to Juror 21. It appears that Petitioner has exhausted his state court remedies for his <u>Batson</u> claim, so that claim will be addressed on the merits here.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act, ("AEDPA"), prescribes the standards that govern this Court's substantive review of Petitioner's habeas corpus claim. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

---

[1] Before Petitioner's appeal was adjudicated, the appeal was stayed, and the case was remanded to the trial court for a hearing on a juror misconduct claim. After that claim was rejected by the trial court, the appeal continued. <u>Ferguson</u>, 729 N.W.2d at 610.

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). See also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

**III. DISCUSSION**

A. The "Batson test"

If a criminal defendant claims that a prosecutor has exercised a peremptory challenge based on the race of a prospective juror, a three-step process is used to

determine whether the claim has merit. First, the defendant must make a prima facie showing that the prospective juror is a member of an identifiable racial group, and that there is some particular reason to suspect that he or she was stricken because of his or her race. Second, if the defendant makes the requisite prima facie showing, then the prosecutor must offer some racially neutral reason for striking the potential juror in question. Third, the court must determine whether the reason offered by the prosecution is genuine or merely pretextual. Batson, 476 U.S. at 96-98; Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam); Snyder v. Louisiana, 128 S.Ct. 1203, 1207 (2008).

In Johnson v. California, 545 U.S. 162 (2005), the Supreme Court clarified the standard to be applied at step one of the Batson test, which is the step at issue here. The Court explained that –

> "We did not intend the first step to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."

Id. at 170 (emphasis added).

### B. Application of the Batson Test in Petitioner's Case

#### (i) Trial court's resolution of Batson claim

In this case, Petitioner challenged the prosecutor's peremptory strike against Juror 21 based on Batson. (Tr. p. 537.) The trial court judge obviously was familiar with Batson, and immediately initiated the first step of the Batson analysis. He asked Petitioner's counsel, "What is the prima facie case it [i.e., the prosecutor's strike against Juror 21] was based on race?" (Tr. p. 537.)

7

As discussed above, Petitioner's counsel cited several grounds for his Batson challenge pertaining to Juror 21, including (i) the prosecutor's decision to ask Juror 21 no questions, (ii) the prosecutor's earlier peremptory strike against a woman from Afghanistan who also was asked no questions, and (iii) Juror 21's declaration that he could be fair and impartial. (Tr. p. 538.) The trial court judge found these proffered reasons to be inadequate – i.e., they did not establish a prima facie case, because they did not permit the judge to draw an inference of racial discrimination. (Tr. p. 544.) Having determined that Petitioner was unable to sustain his burden of making a prima facie showing of race discrimination, the trial judge denied his challenge to the strike against Juror 21 at step one of the Batson procedure, without reaching steps two and three. (Tr. p. 545.)

### (ii) Minnesota Court of Appeals' decision

Petitioner re-raised his Batson challenge to Juror 21 in his direct appeal. The Minnesota Court of Appeals acknowledged the three-step Batson analysis, and found that it had been properly applied by the trial court. Ferguson, 729 N.W.2d at 612-13.

The State Court of Appeals first recognized that the trial court had resolved Petitioner's Batson claim at step one of the procedure prescribed by the United States Supreme Court. The Court explained that "the district court did not hold a full Batson hearing," but instead "concluded that [Petitioner] had failed to make a prima facie case of discriminatory purpose." Id. at 613.

The Court of Appeals then accurately summarized the U.S. Supreme Court's teachings on the first step of the Batson analysis, explaining that –

> "A prima facie case exists when (1) a member of a protected racial group has been peremptorily excluded and (2) the totality of the relevant facts gives rise to an inference of discriminatory purpose....

8

> To determine whether a prima facie case has been made, the defendant does not need to show that it is more likely than not that the peremptory challenge was the product of purposeful discrimination.... 'Instead, a defendant satisfies the requirements of Batson's first step by producing <u>evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.</u>'"

Id., quoting Johnson, 545 U.S. at 170 (emphasis added by Minnesota Court of Appeals).

Next, after reviewing the trial court record, the Minnesota Court of Appeals found that –

> "Although the prosecutor asked no questions before exercising peremptory challenges against two nonwhite jurors, he had the benefit of the defense's questioning of the two jurors, and the jurors had also completed questionnaires, which were available to the prosecution and defense in advance of the voir dire. It is therefore less significant that the prosecutor failed to ask questions. And the prosecutor had questioned a black juror who had been accepted before the prosecutor exercised the disputed peremptory challenges."

729 N.W.2d at 613.

Finally, the Court of Appeals concluded that –

> "Under the circumstances, the sufficiency of the evidence to establish an inference of discrimination is not evident, and the district court therefore did not clearly err when it declined to hold a Batson hearing."

Id.

C. Review of State Courts' Adjudication of the Batson Challenge

The decision of the Minnesota Court of Appeals has been quoted at length, because Petitioner cannot be granted a writ of habeas corpus, unless he shows that the State Court's resolution of his Batson claim is unsustainable under the standard set forth at 28 U.S.C. § 2254(d), (discussed at pp. 4-6, supra). Petitioner acknowledges that the state courts correctly identified the U.S. Supreme Court precedents that are applicable to his current habeas claim – namely Batson and Johnson. But he contends that he is entitled

9

to a writ of habeas corpus under 28 U.S.C. § 2254(d)(1), because the state courts' application of Batson and Johnson was objectively unreasonable.  (See Petitioner's "Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], p. 10.)

However, the Eighth Circuit Court of Appeals has repeatedly and consistently held that "the Batson prima facie case issue," presented at step one of the Batson analysis, "should be reviewed as a finding of fact."  United States v. Moore, 895 F.2d 484, 485 (8th Cir. 1990). Therefore, if a state court applies the Batson analysis to a peremptory strike claim, federal habeas review is governed by § 2254(d)(2), rather than § 2254(d)(1). Weaver v. Bowersox, 241 F.3d 1024, 1031, n. 2 (8th Cir. 2001). This is so because the issue to be resolved on federal habeas review is not a legal issue – i.e., whether the state court's application of Batson was objectively unreasonable for purposes of § 2254(d)(1). Instead, the issue to be resolved is a factual issue – i.e., whether the state court's resolution of the Batson claim "was based on an unreasonable determination of the facts in light of the evidence," for purposes of § 2254(d)(2).  Thus, in Weaver, the Court of Appeals criticized the district court's analysis of a habeas petitioner's Batson claim under § 2254(d)(1), holding that –

> "The district court erred in this respect. [The habeas] petition raised Batson claims, which require factual determinations.  As we explained above, § 2254(d)(2) governs federal review of state court factual determinations."

241 F.3d at 1031, n. 2.[2]

---

[2] Although other courts have found that Batson claims present mixed issues of fact and law, the Eighth Circuit has always viewed Batson-related issues as purely factual.  See Overton v. Newton, 295 F.3d 270, 277, n. 8 (2nd Cir. 2002) (finding that step one of the Batson analysis involves both factual and legal issues, but recognizing that some courts, including the Eighth Circuit and the Fifth Circuit, "have held that, under the AEDPA, the existence of a prima facie Batson case involves only a determination of fact") (citing

10

Because Batson claims present factual issues, which are subject to review under § 2254(d)(2), the state courts' resolution of those issues is presumed to be correct on federal habeas review, and that presumption can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Eighth Circuit has clearly stated that "[e]ach step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003), cert. denied, 541 U.S. 996 (2004). See also Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008) ("[t]he prosecutor's motive in striking a juror is a factual issue,... [citation omitted], and so is entitled to the presumption of correctness required by 28 U.S.C. § 2254(e)(1), which can be rebutted only by clear and convincing evidence"), pet. for cert., filed April 22, 2009; Cox v. Norris, 177 Fed.Appx. 516, 518 (8th Cir. 2006) (unpublished opinion) (state court's finding that habeas petitioner did not establish a prima facie case of a racially motivated peremptory strike "is a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence"); Taylor v. Minnesota, Civil No. 05-294 (JRT/FLN) (D.Minn. 2006), 2006 WL 2583150 at *5 (same).[3]

Our Court of Appeals has also emphasized that trial court judges are "uniquely positioned" to evaluate the specific type of factual issues presented at the various stages of the Batson analysis. Weaver, 241 F.3d at 1030. The Court has explained that –

---

Weaver, 241 F.3d at 1030, and Soria v. Johnson, 207 F.3d 232, 238 (5th Cir.2000), cert. denied, 530 U.S. 1286 (2000)).

[3] Although Petitioner has argued that his Batson claim should be reviewed under § 2254(e)(1), he has candidly (and correctly) acknowledged that "[e]ach step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence." Petitioner's "Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], p. 12.

11

> "Information such as a juror's age, residence, and employment – and its similarity or dissimilarity to the defendant's vital statistics – will not appear on the record but will be important to those responsible for the composition of the jury. In addition, those present are able to evaluate general demeanor; to observe attention span, alertness, and interest; ... [footnote omitted] and to assess reactions indicating hostility or sympathy towards or fear of the parties. Information of this sort cannot be discerned from a transcript. Yet such things may be vitally important when counsel employ their best judgment in exercising their peremptory challenges. The trial judge, with his experience in voir dire, is in by far the best position to make the Batson prima facie case determination. And, because of his unique awareness of the totality of the circumstances surrounding the voir dire, that determination must be treated as a finding of fact entitled to great deference on review."

Moore, 895 F.2d at 486.

Thus, when a federal court reviews a Batson claim presented by a state habeas corpus petitioner, "[o]ur deference to trial court fact-finding is doubly great" because of (1) the trial judge's "'unique awareness of the totality of the circumstances surrounding voir dire,'" and (2) "the statutory restraints on the scope of federal habeas review." Weaver, 241 F.3d at 1030, quoting Moore, 895 F.2d at 486 (emphasis added). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002) ("'deference to trial court fact-finding is doubly great' when considering Batson challenges because of the 'unique awareness of the totality of the circumstances surrounding voir dire'") (quoting Weaver, supra, and Moore, supra), cert. denied, 538 U.S. 923 (2003). Needless to say, a state prisoner seeking federal habeas relief on a Batson claim faces a very difficult task. He must overcome the special deference given to trial judges' rulings on Batson issues, and he must also overcome the normal presumption of correctness accorded to state court factual determinations in all federal habeas cases.[4]

---

[4] In Weaver, the Court of Appeals further explained this "doubly great" burden as follows:

In this case, the trial court judge determined, and the Minnesota Court of Appeals agreed, that Petitioner did not satisfy the first step of the Batson analysis, because he did not establish a prima facie case of racial discrimination.  More specifically, the state courts found that Petitioner did not present sufficient evidence to support an inference that the prosecutor exercised a peremptory strike against Juror 21 because of his race.  Ferguson, 729 N.W.2d at 613 ("the sufficiency of the evidence to establish an inference of discrimination is not evident").

As the trial court judge explained, and the State Court of Appeals reiterated, Petitioner offered only hollow arguments to support his Batson challenge.  Petitioner pointed out that the prosecution did not ask any questions of Juror 21, but the state courts found this "evidence" to be inconsequential, because the prosecutor had the benefit of (a) reviewing Juror 21's responses to a written questionnaire, and (b) listening to Juror 21's answers to the questions posed by defense counsel, (as well as the trial judge).  Id.  Petitioner contends that the prosecutor's decision to not ask Juror 21 any questions is indeed significant, because the prosecutor also elected not to question a prospective juror from Afghanistan.  However, the state courts found that argument to be unpersuasive, and

---

"First, a trial court's determination of the Batson prima facie step is highly fact-intensive.  The determination is based largely upon information 'that will not be evident from a reading of the record,' such as the ability to 'evaluate general demeanor; to observe attention span, alertness, and interest; and to assess reactions indicating hostility or sympathy towards or fear of the parties.'... [citing Moore, 895 F.2d at 485-86].  Second, on habeas review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings, see 28 U.S.C. § 2254(e)(1)."

241 F.3d at 1030.

Petitioner has not provided any persuasive reason to second-guess that assessment here. Like the state courts, this Court is unable to infer racial discrimination just from the prosecutor's lack of questions to Juror 21 and the woman from Afghanistan.

The state trial and appellate courts also pointed out that the prosecution had already accepted an African-American juror before exercising a peremptory strike against Juror 21. Id. The prosecutor's previous acceptance of another African-American juror does not automatically foreclose Petitioner's Batson claim, but it certainly does not aid his cause.[5]

Petitioner faults the State Court of Appeals for making "no mention of statistics in its analysis" of his Batson claim. (Petitioner's "Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], p. 15.)  However, the Court finds that Petitioner's Batson arguments are not based on any meaningful statistical data.  Indeed, Petitioner candidly acknowledges that "this case does not fall neatly into the line of cases where the defendant proves his prima facie case by pointing to a pattern of strikes against minority jurors."  (Id.)  Furthermore, as the Eighth Circuit observed in Weaver –

> "[T]he trial court's decision does not stand or fall on a numbers analysis alone.  The state trial judge personally observed the venirepersons' demeanor during voir dire, and doubtless developed a sense for... their acumen.  Likewise, the state trial judge personally observed the prosecutor during the exercise of peremptory strikes, and later when he explained his conduct."

241 F.3d at 1031.

In sum, Petitioner claims that he "satisfied the requirements of Batson's first prong

---

[5] Petitioner has acknowledged that two more African-Americans were later added to the jury, apparently without drawing peremptory strikes from the prosecutor. (Petitioner's "Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], p. 15.) Those subsequent events also do not aid Petitioner's Batson claim.

'by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.'" (Petitioner's "Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], p. 16.)  That claim, however, was rejected by the trial court judge, who was "uniquely positioned" to evaluate it.  The Minnesota Court of Appeals also rejected that claim.

The state courts' determination that Petitioner failed to satisfy the first prong of the Batson test is a factual determination, which is presumed to be correct in the present federal habeas corpus proceeding.  To overcome that presumption of correctness, Petitioner must show, by clear and convincing evidence, that the ruling of the state courts is "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).  Petitioner has not accomplished that difficult task.  Therefore, his petition for a writ of habeas corpus must be denied, and this action must be dismissed with prejudice.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: May 21, 2009                         *s/ Franklin L.  Noel*
                                                             FRANKLIN L. NOEL
                                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 10, 2009**, written objections which specifically identify the portions of the proposed findings or

recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.